**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document was signed electronically at the time and date indicated, which may be materially different from its entry on the record.**



Dated: 01:50 PM February 6, 2019

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 13 |
| | ) | |
| MATTHEW A. FRAME, | ) | CASE NO. 16-61075 |
| | ) | |
| Debtor. | ) | JUDGE RUSS KENDIG |
| | ) | |
| | ) | **MEMORANDUM OF OPINION** |
| | ) | **(NOT FOR PUBLICATION)** |

Attorney Kenneth L. Sheppard, Jr. filed a fee application in this case seeking $4,995.75 in fees and $487.36 in expenses. He provided notice and no one objected. Upon review, the court declines to grant the fee application in its entirety.

The following constitutes the court's finding of fact and conclusions of law under Federal Bankruptcy Rule 7052. The court has jurisdiction of this case and matter under 28 U.S.C. § 1334 and 28 U.S.C. § 157 and has authority to issue final orders. Venue in this district is appropriate under 11 U.S.C. § 1409.

This opinion is not intended for publication or citation. The availability of this opinion, in electronic or printed form, is not the result of a direct submission by the court.

## BACKGROUND

Mr. Sheppard filed a chapter 13 case for Debtor on May 16, 2016. His Rule 2016 disclosure statement indicates he charged $3,600.00 and was paid a $600.00 retainer. The court confirmed the plan on November 10, 2016.

When the case was filed, the court's administrative order 14-01 governed fees in chapter 13 cases. Under that order, no look fees for this case were $2,325.00. That is a base fee of $1,725.00, plus the $600.00 case termination fee. The no look fee covers most preconfirmation services and limited postconfirmation services.

This case took an arduous path to confirmation, resulting in confirmation of the fifth amended plan. Per an agreed order with the chapter 13 trustee at confirmation, plan payments are $1,670.00 per month. The plan proposed a one percent (1%) dividend to unsecured creditors. Trustee is paying Debtors' residential mortgage, as well as a prepetition arrearage. She is also paying a non-residential mortgage and back real estate taxes. The plan also provides for payment on two vehicles, one being paid in full and the other subject to cramdown. Although the plan extends sixty months to accommodate the payments, the commitment period is thirty-six months.

## DISCUSSION

Attorneys are entitled to reasonable compensation for services rendered. 11 U.S.C. § 329(b). The starting point for determining reasonableness in this circuit is the lodestar method whereby the fee is calculated by multiplying the reasonable time spent on the task by the reasonable hourly rate. Boddy v. U.S., 950 F.2d 334, 337 (6th Cir. 1991). The resulting figure is subject to adjustment by the court based on qualitative factors, including

1. the requisite time and labor;
2. the novelty and difficulty of the issues;
3. the requisite skill;
4. the preclusion of other employment;
5. the customary fee;
6. the risk incurred;
7. time limitations;
8. the amount involved and the results obtained;
9. the experience, reputation and ability of the counsel;
10. the desirability of the case;
11. the nature and length of the case; and
12. the results obtained in similar cases.

In re Kieffer, 306 B.R. 197, 205 (Bankr. N.D. Ohio 2004) (citing Johnson v. Georgia Hwy. Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974)); *see also* 11 U.S.C. § 330(a)(3).

I.   Lodestar

A.  Hourly rates

Mr. Sheppard's hourly rate is $200.00. His paralegal's hourly rate is $85.00. Both of these figures are reasonable. Mr. Sheppard has an associate, Jennifer Donahue, who was admitted in 2016. She is also billing $200.00 per hour. The court finds this figure to be unreasonable. Mr. Sheppard was admitted in 2003 and has bankruptcy experience. Ms. Donahue's recent admission, and lack of experience, do not warrant charging the same rate as Mr. Sheppard.

For example, commercial bankruptcy associates with the law firm Brouse McDowell, LPA, located in Akron, charge $185.00 per hour.[1] The court cannot locate any figures for associate consumer attorneys. Based on the court's knowledge and experience, it finds $150.00 is a reasonable hourly rate for a consumer bankruptcy associate attorney. This is the approximate midpoint between the paralegal's hourly rate and Mr. Sheppard's. The fee application will not be approved in amounts above $150.00 for Ms. Donahue's services.

B.  Time expended

The court has serious concerns about the amount of time expended by all billing parties. Often, billing time is inflated. On occasion, services are unnecessary. Other times, services are simply not billable. Examples of each follow.

1.  Plans

To start, six plans were filed and Mr. Sheppard billed for each one. Reviewing each plan leaves the court befuddled about why all were necessary because the changes, especially in the last three plans, appear minor and possibly addressable through agreed orders. Filing multiple amended plan results in an increase in billable time as well as expenses. This is not the first instance where the court encountered, and opined, on a case from Mr. Sheppard involving multiple plans. In re Smith, Case No. 14-60977 (Bankr. N.D. Ohio December 27, 2016) (fifth amended plan confirmed).

The first amended plan moved the Stark County Treasurer from a priority creditor to a secured creditor, a correction that the court lays at counsel's doorstep. The real estate tax claims should never have been treated as priority claims in the schedules or in the plan. The first amended plan also flipped the car claims. The original plan paid First Investors in full and crammed down Huntington. The amended plan now pays Huntington in full and crams down First Investors.

---

1 In re Briar Hill Foods, LLC, Case No. 17-61892 (ECF # 189). Mr. Hawley was admitted in 2015, Ms. McClung in 2017.

3

The second amended plan adds a Foundation Finance UCC lien[2] and proposes to strip it. Debtor's proposed treatment of the lien is concerning because the numbers used in the petition did not support stripping. The lien was secured by real estate at 1301 Spangler Road, N.E., Canton, Ohio, valued at $80,600.00 on amended Schedule A/B. The mortgage against the property was scheduled at $77,039.00, leaving equity to partially secure the lien, defeating the proposed strip off of the lien. Only after the chapter 13 appraisal valued the property at $80,000.00 did Debtor amend the plan to provide for the treatment that his figures supported. The additional expense resulting from filing a plan that attempts to strip a lien when the values do not support stripping should not be borne by Debtor or the unsecured creditors.

The third amended plan contains a provision that bifurcates plan payments, creating a step payment plan. The fourth amended plan reduces the percentage to unsecured creditors, likely because the Foundation Finance lien is not paid by Trustee and not subject to stripping. The fifth amended plan merely changed the monthly payment on the Foundation Finance lien.

Another issue of inflated billing related to a plan can be seen on August 22, 2016 when the paralegal spent an hour preparing and filing a notice of a continued confirmation hearing. It is a one sentence document mailed to thirty-five creditors. Devoting an hour to the task is unreasonable.

## 2. Claim issues

Multiple small entries of billable time involved Mr. Sheppard reviewing claims. Generally, he devotes between 12 – 30 minutes for review. Even these small billings are excessive.

For example, on May 24, 2016, Mr. Sheppard billed .20 hours (12 minutes) to review claim number 2 (filed by American Electric Power). The filed claim was for $878.00. Debtor scheduled a claim to AEP in the amount of $708.00. It is puzzling how much review is required on these facts, and why the task is not something that could be delegated to a paralegal. This happened repeatedly in Mr. Sheppard's itemized statement. On June 7, 2016 he reviewed two claims, one filed by the Stark County Treasurer in the amount of $5,711.00. Debtor scheduled the debt and listed in the plan for $5,683.00. On the same day, he reviewed proof of claim number five, originally filed by Springleaf in the amount of $3,893.00. Debtor listed the claim on Schedule F at $4,753.00. On July 14, 2016, he review two more unsecured claims. Again, both claims were listed on Schedule F and both claims filed in amounts very close to the amounts scheduled.

The court is much more understanding of the time billed by counsel on July 20, 2016. On that day, Mr. Sheppard reviewed claims twelve, thirteen and fourteen. Midland Funding filed claims twelve and thirteen. No debt was listed in favor of Midland in the schedules. This scenario warrants the review given by counsel.

---

2 Foundation Finance was listed as an unsecured creditor in Debtor's schedules. Per the claim, it is a secured creditor by virtue of a UCC filing for home waterproofing.

The time counsel devotes to routine claim objections is also inflated, specifically the time billed to file an objection to reduce the interest to the appropriate Till rate. Examples include itemized entries on June 24, 2016 and June 27, 2016. Counsel should have a standard form that demands only a few field changes to prepare the document for filing. As it stands, the document is only four paragraphs long. Between counsel and his paralegal, forty-two minutes was devoted to this document.

### 3. Items that should not be billed

The court also finds billing entries that are either unbillable or unnecessary. Interoffice communications between counsel and staff, like those billed on June 24, 2016 and July 25, 2016, fall in the former category. This cost is built into the hourly rate.

Debtor also filed responses to various objections to confirmation, as billed on August 1, 2016 and August 3, 2016. These responses are very atypical and unnecessary in this court. Consequently, charging a client for work that is unnecessary is unacceptable.

The court also found instances where counsel billed to correct a mistake for which he was accountable.[3] For example, on August 22, 2016, he filed an amended certificate of service in response to a deficiency notice which stated he did not serve the creditor at the proper address.

On May 23, 2018, the paralegal emailed Debtor a copy of the chapter 13 trustee's withdrawal of a motion to dismiss. Considering the trustee served Debtor with the document by mail, emailing it should be considered a courtesy, not a billable entry.

## II. Adjustments

### A. Expenses

The court noted its concerns that continually filing amended plans significantly increases expenses. Roughly, it appears that $344.11 of the requested expenses relate to amended plans, continued confirmation hearings, and similar.

### B. Qualitative factors

As outlined above, the time and labor spent on this case was excessive. The case was not complex, complicated or novel, as evidenced by the absence of billing for research. The most unusual piece of the case involved the sale of real estate in 2018. The work was not undesirable or such that would exclude other employment.

---

3 In counsel's defense, the court also finds instances where counsel did not bill for corrective entries, such as the filing the amended schedules on May 17, 2016 and the amended application for an installment payment plan on May 18, 2016.

The customary fee for this case is $2,325.00, plus additional amounts for representation of the sale of the real estate. There is no identifiable risk, nor any time limitations, involved. Outside of the numerous amended plans, the results in this case to date seem in line with similar cases, with the exception of higher than normal fees.

The amount involved is significant when considering the impact on unsecured creditors, who are scheduled to receive a mere 1% of their claims. If this fee application is allowed in full, it likely reduces the dividend to the unsecured claimants because it will reduce the pool of funds available for distribution.

## **CONCLUSION**

Mr. Sheppard is entitled to reasonable compensation for his services. The start of determining what that amount is uses the lodestar method, multiplying a reasonable hourly rate by the time reasonably expended. While Mr. Sheppard and his paralegal's hourly rates are acceptable, his associate attorney's rate of $200.00 per hour is too high. A more reasonable figure is $150.00 per hour.

Overall, the court finds the time expended by Mr. Sheppard and others is unreasonable. Quantifying this is difficult. Going line by line through the fee itemization while comparing it to the docket and claims register is not expeditious. Consequently, the court is going to provide a blanket reduction of twenty-five percent (25%) across the board. This will account for the unreasonable hourly rate and the inflated time entries, as well as those items which the court determined noncompensable. The court will enter an order allowing fees of $3,746.81 and expenses of $365.52.

So ordered.

#    #    #


**Service List:**

Kenneth L. Sheppard, Jr.
Sheppard Law Offices Co LPA
Belden Village Tower, Ste. 200
4450 Belden Village St., NW
Canton, OH 44718

Dynele L Schinker-Kuharich
Office of the Chapter 13 Trustee
200 Market Avenue North, Ste. LL30
Canton, OH 44702

Matthew A. Frame
1301 Spangler St. NE
Canton, OH 44714